**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-80062-CR-MIDDLEBROOKS(s)**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ANTHONY RAUL DEL VALLE,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

<u>**RESPONSE IN OPPOSITION TO DEFENDANT'S**
**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**</u>

Comes now the United States, by and through the undersigned Assistant United States Attorney, and hereby responds in opposition to the defendant's Objections and Recommendations to the Presentence Investigation Report (DE 78). The defendant objects to the quantity of drugs used for the base offense level calculation, the application of various enhancements, the failure to apply a reduction for acceptance of responsibility, and the inclusion of certain language in the Presentence Investigation Report.

The defendant's objections are without merit and should be overruled. The offense conduct narrative, base offense level, and enhancements are supported by evidence proved at trial. Additionally, having proceeded to trial, and having no other conduct showing the requisite remorse, the defendant is not entitled to acceptance of responsibility.

The United States therefore respectfully submits that the sentencing guidelines were properly calculated, and the Presentence Investigation Report should remain as written.

<u>**Paragraph 8**</u>: The defendant objects to the entirety of Paragraph 8, arguing that the pills that were found on Victim 1's body should not be considered under offense conduct, as the "jury

did not specifically find that the Defendant delivered acetyl fentanyl." (DE 78 at 1-2.) He further argues that the chemical makeup was "clearly different" from the chemical makeup of the ten pills possessed by the defendant on April 10, 2024. Both of these arguments are without merit.

First, even though the jury declined to identify the controlled substances involved in Counts 1 and 2, the Court may consider the trial evidence, which clearly established a causal connection from the defendant's distribution on April 8, 2024 to the pills found on Victim 1's body. The jury found the defendant guilty of distributing a controlled substance, and the Court must identify the substances involved to sentence the defendant. The Court may find the applicable quantity of drugs under a preponderance of the evidence standard.[1] *E.g.*, *United States v. Ndiaye*, 434 F.3d 1270 (11th Cir. 2006) ("[W]hen a defendant challenges a factual basis of his sentence, the government has the burden of establishing the disputed fact by a preponderance of the evidence. The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial ….") (quotation omitted)).

The evidence presented at trial established by a preponderance of the evidence that the pills found on Victim 1 were in fact the same pills distributed by the defendant. Victim 3 testified that he, his mother (Victim 2), and his aunt (Victim 1) were out of the prescribed controlled substances to which they were addicted. Victim 3 further testified that when they were out of their prescriptions, the defendant was their only source of controlled substances. Victim 3's testimony was corroborated by the records from Victim 1's phone. And as noted at trial, there was no break

---

[1] The jury found the defendant guilty of Counts 1 and 2, which convictions did not require the jury to identify the controlled substance involved. (*See* DE 74 at 1.) But the newly applicable standard under U.S.S.G. § 1B1.3(c) for considering even *acquitted* conduct at sentencing is particularly instructive here. Even in cases "in which certain conduct underlies both an acquitted charge and the instant offense of conviction … the court is in the best position to determine whether such overlapping conduct establishes, in whole or in part, the instant offense of conviction and therefore qualifies as relevant conduct." U.S.S.G. § 1B1.3 cmt. n.10. Although the jury did not acquit the defendant of Count 1 or 2, even if its failure to identify controlled substance were construed as an acquittal, the Court may fully consider this overlapping conduct and maintain the language in the offense conduct narrative and the correlating base offense level in paragraph 40.

in the chain between the defendant's arrival at the house, Victim 1's interaction with the defendant at his car, Victim 1 having pills available to give to Victims 2 and 3, and a bulk quantity of pills being found on Victim 1's body. The composition of those pills was also consistent with the substances identified in Victim 1's and Victim 2's blood, in that the pills contained acetyl fentanyl and fentanyl, and both victims had acetyl fentanyl and fentanyl in their blood.

Second, the defendant's claim regarding the chemical makeup of the two seizures of pills relies on a misrepresentation of DEA Forensic Chemist Parker Beaupre's testimony. Mr. Beaupre testified that when he initially tested Government Trial Exhibit 11, which contained the twenty-five pills found on Victim 1's body, he tested a random sample of nine pills per DEA policy. He concluded those nine pills contained fentanyl, but the tests were not sensitive to a degree such that Mr. Beaupre could conclude that the pills also contained acetyl fentanyl. After the government requested retesting, Mr. Beaupre compounded fifteen of the remaining pills, which was a sufficient quantity such that he could conclude the pills contained acetyl fentanyl.

Mr. Beaupre further testified that with respect to the ten pills contained in Government Trial Exhibit 10, which he concluded did contain fentanyl, there was not a sufficient quantity to rerun tests for acetyl fentanyl (as demonstrated above with the separate exhibit that required a compound of fifteen pills to detect the acetyl fentanyl). Therefore, he could not conclude whether they contained acetyl fentanyl. This, however, does not mean that they did not contain acetyl fentanyl—there simply was not a sufficient volume of pills to test for its presence.

Finally, the inclusion of paragraph 8 fully sets forth the nature and offense of the conduct involved.

The defendant's objection to the inclusion of paragraph 8 should be overruled.

**Paragraph 13**: The defendant objects to Paragraph 13 as irrelevant to Count 3. The defendant also continues to attack the testimony of Victim 3.

Paragraph 13 is properly included in the Presentence Investigation Report to complete the story of the crime and is particularly relevant as to how law enforcement identified the defendant. Additionally, the defendant's attacks on Victim 3's testimony are unavailing. The paragraph accurately reflects Victim 3's testimony, in which he persisted despite the defendant's attempts at impeachment, that he "personally observed Del Valle distribute" the pills. (Presentence Investigation Report ¶ 13.) The jury clearly credited Victim 3's testimony in finding the defendant guilty of Counts 1 and 2, and paragraph 13 should remain as written.

**Paragraph 31**: Paragraph 31 accurately reflects the testimony of Terrill Tops, M.D., the medical examiner in this case, and should not be stricken on the defendant's claim that the testimony of the forensic toxicologist conflicted.

**Paragraphs 33, 38, 39, 40, and 46**: For the reasons stated above with respect to the defendant's objections to paragraph 8, the United States submits that the defendant's objections to these paragraphs should likewise be overruled. The base offense level was properly calculated and supported by witness testimony, the DEA lab report, and the medical examiner's report.

**Paragraph 41**: The defendant argues that he should not be assessed the two-level enhancement under U.S.S.G. § 2D1.1(b)(2) for using violence, making a credible threat to use violence, or directing the use of violence. (DE 78 at 4.) This objection should be overruled.

Victim 3 testified that unbeknownst to him, the defendant had been lying in wait inside the residence on April 10 where they were scheduled to meet. The defendant forced Victim 3 to empty his pockets. (*See* Gov. Trial Ex. 23a at 2 [DE 63-15].) Victim 3 testified that the defendant took Victim 3's knife from Victim 3's pockets and then "brandished" it to lead Victim 3 out of the

house. Victim 3 testified that the defendant then closed the knife when they got to the front of the house. The defendant offered no evidence to the contrary. When Victim 3 and the defendant emerged from the house, Victim 3 alerted the police to the defendant's possession of the knife (Gov. Trial Ex. 23a at 3 [DE 63-15], which was then recovered from the defendant's person (Gov. Trial Ex. 3 [DE 63-3]).

Given the defendant's use of the knife to force Victim 3 out of the house, the enhancement was properly applied, and the defendant's objection should be overruled.

**Paragraph 42:** The defendant objects to paragraph 42, which applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(13)(B) for having represented or marketed a fentanyl substance as another legitimately manufactured drug, and having acted with willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug. The defendant claims that there is no evidence that he had any knowledge that the pills he possessed on April 10 contained fentanyl, and he again disavows responsibility for the 25 pills found on Victim 1's body.

Circumstantial evidence at trial established the defendant's knowledge, or at a minimum, willful blindness, of the true contents of the pills. Victim 3 testified that at a certain point, the price of the pills decreased below the $30 per pill, although he didn't know why. Additionally, when the defendant learned of Victim 1's death, he repeatedly asked whether there was a cause of death given (Gov. Trial Ex. 21a [DE 63-13]), which indicates his knowledge that the pills were something stronger than the oxycodone for which the victims had a high tolerance.

**Paragraph 48**: The defendant argues that he should receive the reduction for acceptance of responsibility, even though he proceeded to trial. But "[a] defendant must do more than sit quietly and take his medicine. Section 3E1.1 is intended to reward those defendants who

affirmatively acknowledge their crimes and express genuine remorse for the harm caused by their actions." *United States v. Carroll*, 6 F.3d 735, 740 (11th Cir. 1993).

The application notes to U.S.S.G. § 3E1.1 also foreclose the application of the reduction in this instance.

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). *In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.*

U.S.S.G. § 3E1.1 cmt. n.2 (emphasis added).

The defendant showed zero remorse in his pre-trial statements and conduct. When he learned that Victim 1 had passed, instead of expressing remorse, he reiterated how much money he was owed and asked repeatedly about her specific cause of death. (Gov. Trial Ex. 21a at 1-2 [DE 63-13].) When he later learned Victim 2 had died as well, he simply asked, "So, where's the bank card?" (Gov. Trial Ex. 23a at 2 [DE 63-15].)

Indeed, even in his statement to the probation officer in an effort to obtain the reduction, the defendant gave no meaningful acknowledgment of his crimes, simply stating that that he accepts responsibility "for [his] actions in this case"—without any detail as to those actions or any real expression of remorse. Indeed, defendant focuses primarily on excusing his conduct: "I too became addicted to drugs and I am hopefully going to be allowed to participate in the 500-hour drug program …."

6

The defendant should not receive the reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

**Paragraph 110**: The defendant claims that the Court "may not consider conduct for which the Defendant has been acquitted when imposing a sentence." (DE 78 at 6.) This is contrary to Eleventh Circuit case law.

Under "long-standing" Eleventh Circuit precedent, "[r]elevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offense of conviction, as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence." *United States v. Faust*, 456 F.3d 1342, 1347 (11th Cir. 2006) (quoting *United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir.1997)). "[S]entencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." *United States v. Watts*, 519 U.S. 148, 155 (1997). Moreover, "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." *Id.* The Eleventh Circuit upheld this long-standing precedent post-*Booker*. *Faust*, 456 F.3d at 1347-48.

To be sure, as stated by the U.S. Sentencing Commission, "[t]he use of acquitted conduct to increase an individual's federal sentence has been the subject of robust debate among jurists, academics, practitioners, and members of the public, including sentenced individuals." U.S. Sentencing Commission, *2024 Amendments in Brief: Acquitted Conduct* at 1, *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_2024-acquitted-conduct.pdf (last visited Jan. 27, 2025); *see also McClinton v. United States*, 143 S. Ct. 2400 (2023) (Sotomayor, J., statement regarding the denial of cert.). But the

precedent cited above remains Eleventh Circuit precedent at this time. *Cf. United States v. Lamb*, Case No. 22-4031, 2023 WL 8628956, at *5 (6th Cir. Dec. 13, 2023) (Sixth Circuit bound by precedent regarding acquitted conduct "unless and until the Supreme Court or this court, acting en banc, rules otherwise or until the Sentencing Commission makes some Guidelines change").

Here, paragraph 110 simply refers to the Court's ability to consider numerous factors in determining whether to depart under the guidelines or vary under 18 U.S.C. § 3553(a). As of the time of sentencing, that still includes any acquitted conduct that the United States has proved by a preponderance of the evidence.

## <u>CONCLUSION</u>

For the foregoing reasons, the United States submits that the defendant's objections should be overruled in their entirety. Accordingly, the Offense Conduct section of the Presentence Investigation Report should remain as drafted, and the defendant's guidelines range was properly calculated.

Respectfully submitted,

MICHAEL S. DAVIS
ACTING UNITED STATES ATTORNEY

By:   /s/ Alexandra Chase
ALEXANDRA CHASE
ASSISTANT UNITED STATES ATTORNEY
District Court No. A5501746
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1011
Fax: (561) 659-4526
alexandra.chase@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on January 27, 2025, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

/s/ Alexandra Chase
ALEXANDRA CHASE
Assistant United States Attorney